## Case No. 3,584.

### The DASH.

[1 Mason, 4.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1815.

DISTRIBUTION OF PRIZE-MONEY—PRIVATEERS—PAROL AGREEMENTS—ASSIGNMENT—PRIZE ACT.

1. Prize-money must be distributed according to some written agreement of the parties; otherwise, it is distributable according to the 4th section of the prize act of the 26th of June, 1812, c. 107 [2 Stat. 759]. A parol agreement as to distribution is void.

2. If the shipping articles omit to state the shares, to which some of the officers and crew are entitled, they are still entitled to claim their shares under the prize act.

3. A parol assignment of a share in prizes is void.

[4. Cited in Robinson v. Hook, Case No. 11,956, to the point that admiralty possesses exclusive jurisdiction to ascertain who are the captors, because it is an incident to the general jurisdiction, and included in the power of distribution.]

Appeal from the decree of the district court of Maine in a prize proceeding. In August, 1814, the private armed brig Dash [Porter and others, owners] captured the ship Five Sisters, and having taken out her cargo, brought it into Portland, where it was duly libelled in the district court and condemned, and sold by the marshal for the benefit of the captors. Ross and Slater were officers, and Marshall, a seaman, belonging to the Dash at the time of the capture aforesaid. Ross claimed five shares, Slater four shares, and Marshall one share in the prize proceeds in the hands of the marshal of the district for distribution. The cause came on upon the petition of Seward Porter and others, owners of the Dash, asserting that Ross, Slater, and Marshall had shipped for wages only, and praying that the shares of the prize-money, to which they would have been entitled, if they had not shipped for wages only, might be paid to the owners of the Dash: and that a decree might pass upon the marshal accordingly. To this petition Ross, Slater, and Marshall appeared, and filed an intervention, denying the claim of the owners and asserting their own title to their shares of the prize proceeds, as above stated. At the hearing, the original shipping articles were produced. They were in the common printed form of articles for voyages in the merchant service. The first clause was as follows: "It is agreed between the master, seamen, or mariners of the letter of marque brig Dash, William Cammett master, now bound from the port of Portland to one or more of the southern ports of the United States, thence to St. Bartholomew's and back to a port of discharge in the United States, that in consideration of the monthly or other wages against each respective seaman's or mariner's name hereunto set, they severally shall and will perform the abovementioned voyage, &c."—At the end of the common articles was added a clause, agreeing to defend the brig against the public enemy, and to assist in making prizes, &c.— Then followed these words: "The net amount of all prizes and prize goods taken during the voyage to be divided in the following manner, viz. one moiety to the owners of the vessel, and the other to be shared among the officers and crew in the proportion set against their names respectively." Against the names of all the officers and crew there is a sum placed in the column of wages, and against some of their names a share or shares of prizes. Ross and Slater were to have thirty dollars per month, and Marshall eighteen dollars; but no share or shares of prizes were set against their names, or against the names of a major part of the crew. On another paper, filed among the records of the court, was an apportionment of the shares of the officers and crew, in which were assigned to Ross and Slater and Marshall the shares, which were by them respectively claimed in their act in court. And on the same paper was the following memorandum: "Portland, October 7, 1814. We agree to the annexed apportionment of shares in the brig Dash's crew," &c. signed "Samuel and Seward Porter, William Cammett." The whole number of shares was fifty-nine and one half; but, on the shipping articles, eighteen shares only were specified against the names of officers or seamen. There was some testimony in the cause, to show that Ross and Slater had, in consideration of receiving higher wages, (viz. thirty dollars instead of twenty-five dollars per month,) consented in conversation to waive their shares of prize-money in favor of the owners, but there was no written memorandum or agreement to this effect.

The district judge decreed in favor of the respondents [case unreported], and from his decree the petitioners appealed to the circuit court.

Mr. Prescott, for petitioners.

W. Sullivan, for respondents.

STORY, Circuit Justice, delivered the opinion of the court; and, after stating the facts, proceeded as follows:

The prize act (26th June, 1812, c. 107, § 4) declares, that all prizes captured by private armed vessels shall accrue to the owners, officers, and crews of the vessels, by which such prizes are captured; and, after condemnation, shall be distributed according to any written agreement made between them; and, if there be no such agreement, than one moiety to the owners, and the other moiety to the officers and crew, to be distributed between the officers and crew, as nearly as may be, according to the rules of the navy act (23d April, 1800, c. 33). It is therefore clear,

that by the express provisions of the prize act, as well as the form of the commission, the officers and crew have a vested interest in all prizes after condemnation. If the quantity of this interest be not ascertained by the written agreement of the parties, it is ascertained by the law. It is an interest capable of being assigned; and the assignee takes it, not as an equitable, but as a legal interest. Morrough v. Comyns, 1 Wils. 211. But it cannot be granted or assigned by parol. It is at least requisite, that the transfer should be evidenced by writing under the hand of the party.

It is argued, in behalf of the plaintiffs, that here was a written contract as to the division of the prize-money. The shipping articles certainly provide, that the owners shall have one moiety, and the officers and crew the other; but the distribution among the latter is not provided for. It is only declared, that they shall have the shares set against their names respectively. Against the names of more than half of the officers and crew no shares are set. The only shares specified are eighteen in number; whereas it is conceded, the whole number is fifty-nine and one half. It is not pretended, that the parties, whose shares are so specified, are entitled to the whole moiety divisible among the officers and crew; yet, if the argument of the plaintiffs were right, such would be the legal inference. For, if the division be completely provided for by the shipping articles, those only can take, whose shares are specified. The others would be entitled to no shares; and of course the plaintiffs and respondents now before the court would be hors de la loy, as to their present controversy. But such a construction is utterly inadmissible. It is against the express words and intent of the prize act, for that gives a vested interest to all the officers and crew; and when their shares are not ascertained in writing, it ascertains them by an equitable reference to the distribution of prizes in the navy. Unless, therefore, there be express words of exclusion or of transfer in the articles, the prize act must be let in, to supply the omissions. And it may be very doubtful, how far, consistently with the law, a party could exclude himself, without a transfer, from the vested interest of prize. The respondents must, therefore, be held entitled under the act to reasonable shares in the prizes; and these shares have been liquidated by common consent to the shares asserted in their claims.

The next question is, whether the owners have acquired a legal or equitable title to the shares of the respondents. It is argued, that the respondents having shipped for higher wages than the rest of the crew, and no shares being set against their names, there is a necessary presumption from the articles, that they have excluded themselves from prize-money; and that a resulting trust, as to their shares, arises in favor of the owners, by whom the advance was made; and that

this presumption is fortified by the parol proof. As to the parol proof, it must be altogether rejected. Supposing it admissible in point of law, it is much too lax and unsatisfactory, to furnish any sufficient ground for a decree. But it is inadmissible in itself. So far as it is applied to the explanation of the articles, it is attempting to give a construction unauthorized by the language of that instrument. It is expressly agreed, that the owners shall have one moiety only of the prize-money; but this construction will not only give them one moiety, but also a large portion of the other moiety of the officers and crew. It is, therefore, contradictory to the express stipulations of the parties. So far as it is applied to control the distribution, it is liable to this farther objection, that it undertakes to distribute the shares by a parol, instead of a written agreement, as the prize act requires. And so far as it is applied to sustain an assignment, by parol, of the prize shares, it is useless; for such an assignment is utterly void.

The only remaining ground, then, upon which the claim of the owners must rest, is that there has been a legal or equitable transfer to them, by the respondents, supported by written proof. There is no suggestion of an express written transfer; but it is supposed, that the articles contain an implied legal or equitable assignment. It is very difficult to comprehend, from what part of that instrument such an implication can arise. It cannot arise from the mere payment of wages; for this being a voyage under letters of marque for commercial purposes, as well as for captures, it is usual to allow wages; and here all the officers and crew have expressly stipulated for wages. Nor can it legally arise from the payment of higher wages than usual; for these depend upon the particular agreements of the parties. And, in no case, can the payment or non-payment of wages raise a legal presumption against the vested rights of prize. Nor is there any presumption of a resulting trust from the omission to state the shares of the respondents; for the law, in such cases, ascertains the shares for the benefit of the parties themselves, and not of the owners. The argument, therefore, for the plaintiffs is utterly untenable; and the respondents being entitled originally to the shares now claimed by them, must retain that title, since no written assignment can be produced in favor of other persons.

A decree must be entered, that the petition of the petitioners be dismissed; that the prize proceeds, now in the hands of the marshal, be delivered and paid over to the respondents, according to their claims asserted in the acts of court; and that a monition issue to the marshal accordingly; and farther, that the respondents be allowed their reasonable costs and expenses against the petitioners, to be taxed under the direction of the court.